IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 5:13-CV-668-BO

TELETHIA BARRETT and G.B., )
 )
    Plaintiffs, )
 )
 ) **ORDER**
v. )
 )
BOARD OF EDUCATION OF JOHNSTON )
COUNTY, N.C. et al., )
 )
    Defendants. )

This matter is before the Court on defendant Board of Education of Johnston County's

("the Board") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and

(6) [DE 9], and the individual defendants' motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6). [DE 23]. The motions are ripe for adjudication. For the reasons stated herein,

the defendant Board's motion to dismiss is GRANTED and the individual defendants' motion to

dismiss is GRANTED.

## BACKGROUND

Plaintiffs Telethia Barrett and her minor daughter G.B. bring this lawsuit against the

Board and ten individual Board employees seeking injunctive relief and money damages for the

Board's alleged discrimination against plaintiffs that took the form primarily of two letters

banning Barrett, but not her daughter, from Board property throughout the district. The

Complaint alleges 11 causes of action some of which are solely against the Board, some of

which are solely against the individual defendants and some of which are against both the Board

and the individual defendants.

Plaintiffs allege the following causes of action against Board: (1) a § 1983 action alleging discrimination in violation of Title VI and conspiracy to commit the same; (2) a § 1983 action alleging discrimination in violation of Title VI and conspiracy to commit the same; (3) entity liability under § 1983 and *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978); (4) conspiracy in violation of 42 U.S.C. 1985; (5) conspiracy in violation of 42 U.S.C. § 1986; (6) intentional infliction of emotional distress ("IIED"); (7) violations of the North Carolina Constitution; and (8) punitive damages.

Plaintiffs allege the following causes of action against the following individual defendants: (1) a § 1983 claim of retaliation in violation of the First Amendment and conspiracy to commit the same against Croom, Marsh, Beamon, Godwin, Herridge, Lebo, Edmundson, Turner, Siegert, and Gardner; (2) a § 1983 claim of retaliation in violation of the First Amendment and conspiracy to commit the same against Croom, Marsh, Beamon, Godwin, Herridge, Lebo, Edmundson, Turner, Siegert, and Gardner; (3) supervisory violations of 42 U.S.C. § 1983 against Croom Marsh, Beamon, Godwin, Herridge, Lebo, and Edmundson; (4) conspiracy in violation of 42 U.S.C. § 1985 against Croom, Marsh, Beamon, Godwin, Herridge, Lebo, Edmundson, and Turner; (5) conspiracy in violation of 42 U.S.C. § 1986 against Croom, Marsh, Beamon, Godwin, Herridge, Lebo, Edmundson, and Turner; (6) IIED against Croom, Marsh, Beamon, Godwin, Herridge, Lebo, Edmundson, and Turner; and (7) punitive damages against Croom, Marsh, Beamon, Godwin, Herridge, Lebo, Edmundson, Turner, Siegert, and Gardner.

2

## DISCUSSION

### I.    LEGAL STANDARDS.

Defendant Board challenges this Court's subject matter jurisdiction pursuant to Federal Rule of Civil procedure 12(b)(1). Under Rule 12(b)(1), the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). When the 12(b)(1) motion attacks the complaint as failing to state facts upon which subject matter jurisdiction may be based, the facts in the complaint are assumed to be true and the plaintiff is afforded the same protections he or she would receive under a 12(b)(6) motion. *Adams*, 697 F.2d at 1219. Governmental immunity is a jurisdictional defense. *See, e.g., Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001) (potential governmental immunity "affects [] jurisdiction"). When considering a motion to dismiss for lack of subject matter jurisdiction, the Court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, F. & P. R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "The [Court] should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists" and "[t]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

All of the defendants have moved to dismiss Plaintiffs' Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a plaintiff's complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When ruling on the motion, the Court

3

"must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although complete and detailed factual allegations are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Similarly, the Court need not accept as true a plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts. v. J.D. Assocs. Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Accordingly, to survive a Rule 12(b)(6) motion, a complaint must contain facts sufficient "to raise a right to relief above the speculative level" and to satisfy the Court that the claim is "plausible on its face." *Id.* at 555, 570.

## II.    MINOR PLAINTIFF'S CAPACITY TO SUE.

All of the defendants have moved to dismiss all claims brought on behalf of the minor plaintiff, G.B. on the grounds that she has not been appointed a guardian *ad litem* and therefore lacks the capacity to sue. However, on February 19, 2014, Magistrate Judge Robert B. Jones entered an order granting plaintiff's motion to appoint a guardian *ad litem* and appointing Joseph Barrett, the father of the minor plaintiff, as her guardian *ad litem*. [DE 33]. Defendants complain that the motion for the appointment of guardian *ad litem* occurred too late to properly comply with North Carolina law. However, that argument should have been used in a memorandum opposing the motion to appoint, and now it is made too late as the Court has appointed a

4

guardian *ad litem* for the minor plaintiff. Accordingly, this Court finds that the minor plaintiff does have capacity to sue and any argument to the contrary fails defendants.

### III.   DEFENDANT BOARD'S MOTION TO DISMISS.

#### A.   Section 1983 Claims.

Plaintiffs bring two claims against the Board under Section 1983 for racial discrimination in violation of Title VI of the Civil Rights Act of 1964,[1] and one claim of entity liability under Section 1983 and *Monell*. In the first cause of action, plaintiffs contend that the Board "discriminated against plaintiffs because of their race" by (1) "[t]reating Ms. Barrett differently than Caucasian parents" by imposing the October 2010 First Ban and agreeing with its Superintendent and unidentified "managing employees" "not to respond to Ms. Barrett's appeal of the Board's [2010] ban," (2) retaliating against plaintiffs "because of Ms. Barrett's advocacy on behalf of African-American students" with respect to "the Board's programs for gifted students" and "for filing a successful complaint with" the United States Department of Education's Office of Civil Rights ("OCR"); and (3) refusing to enroll G.B. in the Board's academically and intellectually gifted ("AIG") programs without application and re-testing. The third cause of action asserts that the Board discriminated against plaintiffs by imposing the September 2011 Second Ban. The fifth cause of action asserts that the Board is liable under Section 1983 for all of the alleged deprivations of plaintiffs' rights pursuant to *Monell*.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."

---

[1] Section 601 of Title VI provides "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Plaintiffs allege that the Board is a recipient of Federal funding for the purposes of their § 1983 claims.

5

*Monell*, 436 U.S. at 691.[2] Only in cases where the municipality causes the deprivation 'through an official policy or custom' will liability attach." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). "Because section 1983 was not designed to impose municipal liability under the doctrine of respondeat superior, the 'official policy' requirement was 'intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby to make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *Riddick v. Sch. Bd. of the City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). A municipal policy or custom arises in four ways:

> "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law."

*Lytle*, 326 F.3d at 471 (citations omitted). Here, plaintiffs' fifth cause of action invokes municipal policy or custom by alleging, in conclusory terms, the last three methods of finding such a policy or custom. Plaintiffs claim that the Board is liable for deprivation of plaintiffs' federally protected rights because the deprivations were the result of (a) the decisions of persons with final policy making authority for the Board; (b) failures of the Board to act that manifest deliberate indifference to the rights of citizens like plaintiffs; and (c) a practice of the Board that is so persistent as to constitute a custom or usage with the force of law. However, these allegations are conclusions that are unsupported by the alleged facts.

Bare assertions that "amount to nothing more than a formulaic recitation of the elements' of a constitutional discrimination claim" cannot withstand a motion to dismiss. *Iqbal*, 556 U.S. at 681 (quotation omitted). Plaintiffs' allegations regarding the Board's liability under § 1983 are

---

[2] School boards and municipalities are indistinguishable for purposes of § 1983. *Monell*, 436 U.S. at 696.

exactly the type of allegations that *Iqbal* ruled were not enough as they are wholly lacking in factual support.

i.      Final policymaking authority.

The complaint does not adequately plead municipal liability based on decision-making by an authorized "policymaker." "To qualify as a final policymaking official, a municipal official must have the responsibility and authority to implement *final* municipal policy with respect to a particular cause of action." *Riddick*, 238 F.3d at 523 (citation omitted). "[T]he type of policy making authority which can invoke § 1983 liability is authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government." *Lytle*, 326 F.3d at 472 (citation omitted). "In order to determine which officials possess final policymaking authority for the allegedly unconstitutional action in question, [the Court] must look to the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law." *Riddick*, 238 F.3d at 523 (quotation omitted).

Here, none of the actions alleged in the complaint suggest that the allegedly discriminatory acts plaintiffs describe resulted from decisions or actions of persons with final policymaking authority for the Board. With respect to the first ban, plaintiffs allege that an unnamed group of defendants exchanged a series of emails in which they agreed to ban Ms. Barrett from Board property and then implemented the ban through a letter delivered by Herridge, the Board's director of elementary education and the interim principal of Cooper Elementary. Plaintiffs' allegations that Marsh, Herridge, Croom, Beamon, and Godwin have final policymaking authority for the Board regarding decisions that caused violations of plaintiffs' federally protected rights are conclusory. Further, they are contrary to law.

7

None of the individual defendants have, as a matter of North Carolina law, final policy making authority with respect to Board policy governing the matters raised in the complaint – access to Board property, appeal procedures, and enrollment in the AIG programs. North Carolina vests the Board itself with the authority to make final policy for the local school district. *See* N.C. Gen. Stat. § 115C-40. Even the superintendent is not a final policy maker as he is bound by the decisions of the Board and the Board is not bound by his actions. *See* N.C. Gen. Stat. § 115C-276 ("All acts of local boards of education, not in conflict with State law, shall be binding on the superintendent, and it shall be his duty to carry out the rules and regulations of the board."). Absent a showing that the Board itself has directed, participated in, or sanctioned the challenged action, the superintendent cannot be said to have final policy making authority. *See Love-Lane v. Martin*, 355 F.3d 766, 782–83 (4th Cir. 2004) (noting the local board of education cannot be held liable "for decisions committed to [the superintendent's] discretion" absent a showing that the board was aware of the alleged constitutional violation "and either participated in, or otherwise condoned, it" because "there is no respondeat superior liability under § 1983").

Because none of the school board officials and employees named in the complaint are authorized under state law to exercise final policymaking authority for the Board, the acts and decisions of the individual defendants cannot be legally said to represent official Board policy and thus cannot provide the basis for the Board's liability under § 1983. Plaintiffs' conclusory allegations that the Board can be held liable because the deprivations suffered by plaintiffs resulted from "the decisions of persons with final policymaking authority" fall well short of the 12(b)(6) pleading standard.

8

### ii. Failures of the Board to act.

Section 1983 municipal liability based on failure to act requires a showing of "omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (quotation omitted). "[A] plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a *particular* constitutional or statutory right will follow the decision." *Id.* (emphasis in original) (quotation omitted).

Here plaintiffs allege that the Board can be held liable under § 1983 because of unspecified "failures of the Board to act that manifest deliberate indifference to the rights of citizens like plaintiffs." This is nothing more than a formulaic recitation of the legal standard for finding municipal liability under § 1983. The complaint offers no non-conclusory factual allegations that suggest, let alone show, deliberate indifference on the part of the Board, and the complaint makes no attempt to show a "close fit between the unconstitutional policy and the constitutional violation." *Id.* Indeed, plaintiffs point to no particular policy at all. Accordingly, plaintiffs do not sufficiently plead municipal liability under § 1983 as a result of the Board's failure to act.

### iii. Custom or practice.

To impose liability on the Board for deprivations of plaintiffs' rights pursuant to a municipal "custom or practice," "there must be numerous particular instances of unconstitutional conduct." *Lytle*, 326 F.3d at 473 (quotation omitted). Here, plaintiffs fail to describe any practice of the Board that is "so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* (quotation omitted). The complaint describes isolated incidents involving Barrett and her interactions with administrators at Cooper

9

and Cleveland elementary schools. However, "isolated incidents of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes." *Id.* (quotation omitted).

The complaint does not allege or describe numerous particular instances of selective, district-wide bans imposed on parents on race based grounds that would suggest a widespread custom or practice of discrimination. The complaint only alleges that Barrett herself was treated differently from Caucasian parents and thus discriminatorily when she was banned from Board property. This is a conclusory allegation and the complaint is devoid of allegations of fact which support a finding of a Board practice that is so persistent as to constitute a custom or usage with the force of law. Accordingly, plaintiffs again fail to meet the pleading requirements to survive a motion to dismiss on this issue.

Because plaintiffs have failed to sufficiently allege facts supporting a theory of municipal liability under § 1983 that satisfies the 12(b)(6) pleading standard, all of plaintiffs' claims against the Board alleging liability under § 1983 must be dismissed.

      B.     Conspiracy Claims Under Sections 1985 and 1986.

Plaintiffs claim that the Board conspired to deprive plaintiffs of their rights to equal protection of the laws and/or equal privileges and immunities under the laws in violations of 42 U.S.C. § 1985. They further claim that the Board was aware of the alleged conspiracy and had the power to prevent the wrongs conspired to be done, "yet they neglected or refused to do so," in violation of 42 U.S.C. § 1986.

          i.     Section 1985.

In order to plead a conspiracy in violation of § 1985,

> A plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3)

10

deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995) (citation omitted). "The Fourth Circuit applies a 'relatively stringent standard for establishing Section 1985 conspiracies.'" *Mbadiwe v. Union Mem. Reg'l Med. Ctr.*, 2005 U.S. Dist. LEXIS 31674, *7 (W.D.N.C. Nov. 28, 2005) (quoting *Simmons*, 47 F.3d at 1377). "[A] plaintiff must allege 'concrete facts' showing that defendants entered into a conspiracy which deprived the plaintiff of her civil rights." *Williams v. Carolinas HealthCare Sys.*, 2012 U.S. Dist. LEXIS 102014, *12 (W.D.N.C. July 23, 2012); *see also Giacomelli*, 588 F.3d at 196–97 ("To plead a violation of § 1985, the plaintiffs must demonstrate with specific facts that the defendants were motivated by a specific class-based, invidiously discriminatory animus to deprive the plaintiffs of the equal enjoyment of rights secured by the law to all.") (quotation omitted); *Mauney v. Cricket/Bojangles Coliseum*, 2012 U.S. Dist. LEXIS 168748, *18 (W.D.N.C. Oct. 3, 2012) ("Conclusory allegations of a conspiracy, in the absence of concrete supporting facts, are insufficient to state a claim.").

Here, plaintiffs fail to allege concrete facts from which the Court can infer that an agreement existed among the defendants to deprive plaintiffs of any protected right. Rather, the complaint conclusively alleges that the defendants engaged in a conspiracy to deprive plaintiffs of their rights because of the color of their skin. This amounts to a mere recitation of the elements of a § 1985 claim and without factual elaboration, these allegations cannot withstand a motion to dismiss. Accordingly, plaintiffs' claim of conspiracy against the Board in violation of § 1985 is dismissed.

ii.     Section 1986.

"Section 1986 provides a cause of action against any party with knowledge of a § 1985 conspiracy who fails to attempt to prevent the conspiracy." *Brisset v. Paul*, 1998 U.S. App. LEXIS 6824, *10 (4th Cir. Apr. 6, 1998). "[A] §1986 claim is dependent on the existence of a § 1985 claim." *Id.* (citation omitted). Because here, plaintiffs' § 1985 claim has been dismissed for failure to state a claim, their § 1986 claim must be dismissed as well.

C.     IIED Claim.

"As a general rule, the doctrine of governmental, or sovereign immunity bars action against, *inter alia*, the state, its counties, and its public officials sued in their official capacity." *Herring v. Winston-Salem/Forsyth Cnty. Bd. of Educ.*, 529 S.E.2d 458, 461 (N.C. App. 2000) (quotation omitted). "The doctrine applies when the entity is being sued for the performance of a governmental function." *Id.* "[A] county board of education is a governmental agency, and is therefore not liable in a tort or negligence action except to the extent that it has waived its governmental immunity pursuant to statutory authority." *Magana v. Charlotte-Mecklenburg Bd. of Educ.*, 645 S.E.2d 91, 92 (N.C. App. 2007). A board of education may waive this immunity by purchasing liability insurance. *Id.*

> Any local board of education, by securing liability insurance as hereinafter
> provided, is hereby authorized and empowered to waive its governmental
> immunity from liability for damage by reason of death or injury to person or
> property caused by the negligence or tort of any agent or employee of such board
> of education when acting within the scope of his authority or within the course of
> his employment. Such immunity shall be deemed to have been waived by the act
> of obtaining such insurance, but such immunity is waived only to the extent that
> said board of education is indemnified by insurance for such negligence or tort.

N.C. Gen. Stat. § 115C-42. "[T]his statute provides the only means by which a board of education may waive its sovereign immunity. *Magana*, 645 S.E.2d at 93 (citation omitted). North

Carolina Courts strictly construe § 115C-42 against waiver. *Lucas v. Swain Cnty. Bd. of Educ.*, 573 S.E.2d 538, 541 (N.C. App. 2002).

Here, the complaint alleges that the Board has waived immunity through its procurement of liability insurance and has thereby waived its governmental immunity from liability for the alleged conduct. Because this question is one of jurisdiction, the Court may consider evidence outside of the pleadings without converting this motion to dismiss into one for summary judgment. *Richmond, F. & P. R.R. Co.*, 945 F.2d at 768. Therefore, the Court has considered the affidavits of Melody Coons and Art Stanley submitted by the Board as evidence showing that the Board has not waived its immunity here.

Section 115C-42, the only means by which the Board can waive its immunity, provides for waiver only where the Board has "secur[ed] liability insurance" that is "issued by a company or corporation duly licensed and authorized to execute insurance contracts in this State or by a qualified insurer as determined by the Department of Insurance. . . ." N.C. Gen. Stat. § 115C-42. Here, the Board has not purchased liability insurance that meets the statutory requirements, and instead participates in the North Carolina School Boards Trust ("NCSBT"). The Board's participation in the NCSBT does not qualify as a purchase of "insurance" under the statute. *See, e.g., Lucas,* 572 S.E.2d at 540–42; *Craig v. New Hanover Cnty. Bd. of Educ.*, 648 S.E.2d 923, 925 (N.C. App. 2007), *rev'd on other grounds*, 678 S.E.2d 351 (N.C. 2009).

As the NCSTB is the sole source of potential insurance coverage in this case and it does not meet the express requirements for waiver of immunity established in § 115C-42, the Court lacks jurisdiction to consider plaintiffs' IIED claim against the Board as it has properly invoked its sovereign immunity here.

13

D.      Violations of the North Carolina Constitution Claim.

A plaintiff can assert a direct claim under the North Carolina Constitution only when there is no adequate remedy at common law or under a state statute. *See Corum v. Univ. of N.C.*, 413 S.E.2d 276, 289 (N.C. 1992) (holding that in the absence of an adequate state remedy, a claimant has a direct claim against the state under the N.C. Constitution); *Craig*, 678 S.E.2d at 354 (citing *Corum*). For an adequate state law remedy to exist, the remedy "must provide the possibility of relief under the circumstances." *Id.* at 355. "[T]o be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." *Id.* Further, North Carolina Courts "have found adequate state law remedies to exist where a state law claim against an officer in his individual capacity remains even after the dismissal of official capacity claims against another defendant." *Maney v. Fealy*, 2013 U.S. Dist. LEXIS 100248, *28–29 (M.D.N.C. Jul. 18, 2013) (collecting cases).

Here, plaintiffs have alleged an IIED claim against not only the Board, but also the individual defendants in their official and individual capacities. The individual capacity claims are not subject to governmental immunity, and are based on the same violations of rights as the claims against the Board. Therefore, plaintiffs are not barred from entering the courthouse and presenting their claims. This means that plaintiffs have an adequate remedy under state law that, if successful, would compensate them for the injuries they allege.[3] Accordingly, their direct claims under the North Carolina Constitution against the Board must be dismissed.

---

[3] It is noted here that a plaintiff's inability to adequately plead the elements of a common law tort claim does not render a remedy unavailable within the meaning of *Corum*. *See Cooper v. Brunswick Cnty. Bd. of Educ.*, 2009 U.S. Dist. LEXIS 45010, * 11 (E.D.N.C. May 26, 2009) (holding that what matters is that the remedy is available, existing, and applicable, not whether the plaintiff could or could not use it to sue a preferred defendant).

14

E.    Punitive Damages.

It is well settled that, absent statutory provisions to the contrary, municipalities are "immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Facts Concerts, Inc.*, 453 U.S. 247, 271 (1981). No statutory exception permits an award of punitive damages against the Board and the complaint alleges no exception, so the Board is immune from punitive damages here. Accordingly, plaintiffs' claim for punitive damages against the Board is dismissed.

IV.    INDIVIDUAL DEFENDANTS' MOTION TO DISMISS.

A.    Section 1983 Claims.

Plaintiffs bring two claims against all ten individual defendants in their individual capacities under § 1983 for retaliation in violation of the First Amendment. The first of these claims asserts that the individual defendants conspired with the Board to retaliate against plaintiffs because Ms. Barrett engaged in conduct protected by the First Amendment when she complained to the Board's officials and employees about race-based discrimination in the Board's enrollment of students in its AIG programs. The alleged retaliation took the form of subjecting G.B. to physical and verbal abuse and other harassment and later banning Ms. Barrett from all property owned or controlled by the Board indefinitely. The second retaliation claim asserts that the individual defendants took adverse action against Ms. Barrett and G.B. because Ms. Barrett engaged in constitutionally protected conduct in filing a complaint with OCR accusing the Board of race discrimination. With respect to this claim, the alleged retaliation took the form of subjecting G.B. to physical and verbal abuse, exclusion, and other harassment and again banning Ms. Barrett from all property owned or controlled by the Board.

15

Plaintiffs further allege that individual defendants Croom, Marsh, Beamon, Godwin, Herridge, Lebo, and Edmundson are liable for supervisory violations of § 1983 in their individual capacities. Plaintiffs allege that these defendants had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like plaintiffs and that their response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of their subordinates' offensive practices.

### i.     Abuse and harassment of G.B.

Plaintiffs' claims are dismissed to the extent plaintiffs attempt to rely on the "physical and verbal abuse, exclusion, and other harassment" to which G.B. was allegedly exposed. These allegations are entirely conclusory and are unsupported by any allegation of fact describing the alleged abuse, exclusion, and harassment. The complaint only mentions these allegations in passing and does not even attempt to build a factual background for them. [DE 1 at ¶ 63, 77]. Accordingly, only the first and second bans are relevant to plaintiffs' retaliation claims.

### ii.     Qualified immunity.

Qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). To determine whether qualified immunity applies, the Court must "(1) identify the right allegedly violated, (2) consider whether at the time of the alleged violation the right was clearly established, and (3) determine whether a reasonable person in [the official's] position would have known that his actions violated that right." *Love-Lane*, 355 F.3d at 783. The last two prongs of the qualified immunity test turn on

16

"the objective legal reasonableness of the action, assessed in light of legal rules that were clearly established at the time it was taken." *Cole v. Buchanan Cnty. Sch. Bd.*, 328 F. App'x 204, 208 (4th Cir. 2009) (unpublished) (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).

Although not controlling, *Cole* is instructive. In *Cole*, a local newspaper reported brought a § 1983 retaliation claim against four individual members of the local school board as well as the board itself after the board voted to ban him from all school property throughout the county, allegedly because he exercised his First Amendment right to publish articles critical of the board. 328 F. App'x at 207. "The appropriate inquiry here is whether a reasonable Board member could have believed that banning [plaintiffs] from the [Johnston] County school grounds was lawful, in light of clearly established law and the information Board members possessed." *Id.* at 210. This analysis focuses on whether the ban itself, the Board's activity, was lawful.

In answering that inquiry, the Fourth Circuit considered the broad "authority of school boards to control access to school grounds" in order to "determine the objective reasonableness of the board's conduct," noting that "[a] school board . . . has inherent authority to restrict access to the property that it controls." *Id.* at 208–09 (citations omitted). Further, many courts have held that parents do not have a constitutional right to be on school premises. *Justice v. Farley*, 2012 U.S. Dist. LEXIS 3284, *7 (E.D.N.C. Jan. 11, 2012) (collecting cases). Because it was established that "a school board has broad authority to restrict access to school grounds" and that "the Board has wide latitude in making determinations about access to school grounds," "a reasonable Board member certainly could have believed banning Cole from school property was lawful." *Cole*, 328 F. App'x at 209–11.

Applying the inquiry to the facts alleged in this case, this Court reaches the same conclusion of the Fourth Circuit in *Cole* and finds that the individual defendants here are entitled

17

to qualified immunity. A reasonable Board employee could have believed that banning a parent from access to Board property would not violate the parent's constitutional rights. Such an employee also could have believed that parents have no constitutional right of access to school premises and that the bans of Ms. Barrett from Board property were lawful given the wide discretion afforded school officials to make determinations about who should have access to school grounds. Because the conduct complained of did not violate a clearly established right, the individual defendants are entitled to the protections afforded by the qualified immunity doctrine and plaintiffs' § 1983 claims tied to the banning of Ms. Barrett from Broad property are dismissed.

### iii. Supervisory violations of section 1983.

"[S]upervisors and municipalities cannot be liable under §1983 without some predicate constitutional injury at the hands of the individual state officer, at least in suits for damages." *Waybright v. Frederick Cnty.*, 528 F.3d 199, 203 (4th Cir. 2008) (quotation and alteration omitted). Further, it would be logically incoherent for there to be supervisory § 1983 liability where qualified immunity protects the subordinates, but not the supervisor. If it was reasonable for the employees to believe that no rights were being violated by their ban of Ms. Barrett, it would be similarly reasonable for their supervisors to see no reason to respond. Further, the qualified immunity afforded to the employees shows the engaged in conduct did not pose a pervasive and unreasonable risk of constitutional injury. Accordingly, plaintiffs' supervisory liability under § 1983 claim is dismissed.

### B.    Conspiracy Claims Under Sections 1985 and 1986.

Plaintiffs claim that eight of the ten individual defendants, in both their individual and official capacities, along with the Board, conspired to deprive plaintiffs of their rights to equal

18

protection of the laws and/or equal privileges and immunities under the laws in violation of 42 U.S.C. § 1985. They further claim that the same defendants were aware of the alleged conspiracy and had the power to prevent the wrongs conspired to be done, yet they neglected or refused to do so in violation of 42 U.S.C. § 1986. As explained *supra* Part III.B, the plaintiffs' allegations are of an implausible conspiracy that is offered only in conclusory terms. Plaintiffs fail to offer the allegations of when, where, how, and why defendants conspired to deprive plaintiffs of their rights. Accordingly, plaintiffs have failed to meet the 12(b)(6) pleading standard and these claims must be dismissed.

        C.     IIED Claim.

Plaintiffs assert a claim for intentional infliction of emotional distress against individual defendants Croom, Marsh, Beamon, Godwin, Herridge, Lebo, Edmundson, and Turner. To state a claim for IIED, plaintiffs must allege "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Dickens v. Puryear*, 276 S.E.2d 325, 335 (N.C. 1981). Liability for IIED arises only when a defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Briggs v. Rosenthal*, 327 S.E.2d 308, 311 (N.C. App. 1985) (quotation omitted). "The determination of whether the conduct alleged was intentional and was extreme and outrageous enough to support such an action is a question of law. . . ." *Lenins v. K-Mart Corp.*, 391 S.E.2d 843, 848 (N.C. App. 1990).

Here the plaintiffs have not alleged any conduct on the part of any individual defendant that could be reasonably regarded as extreme and outrageous enough to support an IIED action. The complaint does not specify which alleged acts by any of the defendants form the basis for

19

plaintiffs' IIED claim, and a review of all of the alleged facts provides no basis for such a claim. First, the allegations that G.B. was subjected to physical and verbal abuse and other harassment are conclusory and offer no specificity as to when these incidents occurred or who propagated them as explained *supra* Part IV.A.i. Therefore these alleged facts cannot form the basis of an IIED claim as they do not meet the pleading standard. Second, banning Ms. Barrett cannot be said to be extreme or outrageous conduct that is sufficient to support an IIED claim. As explained *supra* Part IV.A.ii there is no parental right of access to Board property and no reasonable person could view banning a parent from Board property as violating of any rights. Accordingly it is not sufficient to support an IIED claim. As plaintiffs can point to no properly pleaded facts which can support their IIED claim, it must be dismissed.

> D.    Punitive Damages.

The individual defendants are entitled to qualified immunity with respect to plaintiffs' First Amendment retaliation claims and plaintiffs have failed to adequately allege any other claims against the individual defendants. Therefore they have no surviving claims which can support punitive damages and their claim for such damages must be dismissed. *Hunter v. Town of Mocksville*, 2013 U.S. Dist. LEXIS 150765, * 33 (M.D.N.C. Oct. 21, 2013).

## CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss are GRANTED. Plaintiffs' claims for relief are hereby DISMISSED. The clerk is directed to enter judgment accordingly and to close the file.

SO ORDERED. This the ___*8*___ day of April, 2014.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

20